[No. 27968. Department Two. September 5, 1940.]

THE STATE OF WASHINGTON, *Appellant,* v. BERYL S. MILES, *Respondent.*[1]

[1]Reported in 105 P. (2d) 51.

*Smith Troy* and *John S. Lynch, Jr.,* for appellant.
*Wallace G. Mills,* for respondent.

STEINERT, J.—The prosecuting attorney for Thurston county filed an information charging defendant with "the crime of offering a reward for display of a game animal, . . . to-wit: a deer." The alleged illegality of defendant's act was based on a regulation prescribed by the state game commission. Defendant's demurrer to the information was sustained, and, the state having elected to stand on its pleading, the court entered an order dismissing the action. The state has appealed.

According to the briefs, this controversy arose out of the following facts: Respondent, Beryl S. Miles, is engaged in the operation of a sporting goods store located in the city of Olympia. He and his father, now deceased, had operated this store over a long period of time, and for several years had regularly offered a ten-dollar cash prize to the person displaying the largest deer at their store during the open season for hunting such game animals. Following that custom, respondent, on October 9, 1939, made a similar offer in writing, and for that act he was charged with the alleged offense. The prosecution was based on regulation No. 382, promulgated by the state game commission on April 23, 1939, and reading as follows:

"RESOLVED: That it shall be unlawful to offer, pay or receive any reward, prize or compensation for the hunting, pursuing, taking, killing or *displaying* of any game animal, game bird or game fish or any part thereof." (Italics ours.)

The regulation was adopted by the state game commission under the rule-making power granted to it by Rem. Rev. Stat. (Sup.), § 5855-6 [P. C. § 4-107 f], which, so far as pertinent here, reads:

"The state game commission shall have the power and it shall be its duty from time to time to adopt, promulgate, amend and/or repeal, and enforce reasonable rules and regulations governing and/or prohibiting the *taking* of the various classes of game. . . . " (Italics ours.) Laws of 1933, chapter 3, p. 29, § 12.

We have no statute in this state which expressly prohibits the *displaying* of game of the kind involved in the present action. Further, it is to be noted that Rem. Rev. Stat. (Sup.), § 5855-6, quoted above, does not of itself prohibit the *display* of game, whether lawfully or unlawfully taken; nor does that statute, in turn, expressly authorize the adoption of rules or regulations prohibiting such *display*. Whether or not a statute which either contained a direct prohibition of that character or else authorized such a rule would be a valid exercise of legislative authority, does not concern us here, for no such question is now presented.

It will also be observed that, in its full implication, the "regulation" promulgated by the state game commission makes it unlawful to *display any* such game animal, or *any* part thereof, no matter where, when, by whom, or under what circumstances the animal was *taken*. Whether or not such a regulation is reasonable, aside from any question of authority for its adoption, we are likewise not here called upon to decide, for that question also has not been raised.

The sole question presented to us for decision is whether or not the state game commission had *authority* to promulgate and enforce the regulation on which the information herein was based, or, more precisely,

as applied to the present situation, whether or not the power to "promulgate . . . and enforce reasonable rules and regulations governing . . . the *taking* of . . . game" includes the power to promulgate and enforce a rule relative to the offering of prizes for the *display* of game.

■ It is well settled that the legislature may, under proper circumstances, delegate to executive or administrative officers and boards authority to promulgate rules and regulations to carry out an express legislative purpose, or to effect the operation and enforcement of a law. The general principle governing the conditions under which such power may be delegated has been succinctly stated in 11 Am. Jur. 955, § 240, as follows:

"A legislature, in enacting a law complete in itself and designed to accomplish the regulation of particular matters falling within its jurisdiction, may expressly authorize an administrative commission, within definite valid limits, to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose."

Many authorities are cited to support that statement. Our own decisions are in full accord with the principle there announced. *State ex rel. Criswell v. Board of Trustees of Firemen's Relief & Pension Fund,* 93 Wash. 468, 161 Pac. 361; *State ex rel. Chicago, M. & St. P. R. Co. v. Public Service Commission,* 94 Wash. 274, 162 Pac. 523; *State ex rel. McBride v. Superior Court,* 103 Wash. 409, 174 Pac. 973; *State v. Thompson,* 111 Wash. 525, 191 Pac. 620; *Vail v. Seaborg,* 120 Wash. 126, 207 Pac. 15; *State v. Nelson,* 146 Wash. 17, 261 Pac. 796; *In re Gifford,* 192 Wash. 562, 74 P. (2d) 475, 114 A. L. R. 348; *State ex rel. Washington Toll Bridge Authority v. Yelle,* 195 Wash. 636, 82 P. (2d) 120; *Home Owners' Loan Corp. v. Rawson,* 196 Wash. 548, 83 P. (2d) 765.

In exercising the rule-making power, however, such

326

administrative officers and boards must act within the limits of the power granted to them. *Seattle High School Chapter No. 200 v. Sharples,* 159 Wash. 424, 293 Pac. 994, 72 A. L. R. 1215; *Campbell v. Galeno Chemical Co.,* 281 U. S. 599, 74 L. Ed. 1063, 50 S. Ct. 412; *Doran v. Colonial Drug & Sales Co.,* (C. C. A., 10th), 58 F. (2d) 65; *Fisher v. J. H. Sheridan Co.,* 182 S. C. 316, 189 S. E. 356, 108 A. L. R. 981; 11 Am. Jur. 959, § 240. The basis for that proposition is, of course, that rules and regulations which have the effect of extending, or which conflict in any manner with, the authority-granting statute, do not represent a valid exercise of authorized power, but, on the contrary, constitute an attempt by the administrative body to legislate. *Anheuser-Busch, Inc. v. Walton,* 135 Me. 57, 190 Atl. 297.

When a situation involves a prosecution for the alleged violation of an administrative order, it calls for a scrutiny of such order with especial care, and in such instances, more so than in other cases, it must clearly appear that the order is one which falls within the scope of the authority conferred. *State v. Retowski,* 6 W. W. Harr. (Del.) 330, 175 Atl. 325; *Cerritos Gun Club v. Hall,* (C. C. A., 9th), 96 F. (2d) 620.

■ We entertain no doubt that, under Rem. Rev. Stat. (Sup.), § 5855-6, the state game commission has the authority to promulgate reasonable rules and regulations governing the *taking* of game. Thus, it may prescribe that one may not take game without first procuring a license; that he may not take game except at certain times or places, or except with certain weapons; that he may take only a certain amount or character of game. There are many other such rules and regulations, concerning the validity of which there can be no question. They all relate to the protection and conservation of the game supply, and they all have

reference to the conditions under which game may be *taken.*

But, in our opinion, a regulation which purports to prohibit the *display* of game after it has been taken, has no proximate connection with the *taking* of game. If, for the purpose of argument merely, we concede the correctness of the state's contention that the offer of a prize creates an additional inducement to the hunter or fisherman, we will thereby have established nothing more than the mere motive prompting the sportsman. The game law, however, neither censures nor is concerned with his motive. It concerns itself only with the conditions surrounding the *taking* of game. If the legislature desires to prohibit the *display* of game, it can readily say so; it is not for the administrative board, however, to extend or modify the statute. We are convinced that a regulation prohibiting the offering of a prize for the *display* of game is not a regulation governing or prohibiting the *taking* of game, nor does it tend to aid the enforcement of any legislative purpose respecting such taking. Hence, the game commission had no authority to adopt a rule prohibiting such display.

The judgment is affirmed.

BLAKE, C. J., BEALS, JEFFERS, and DRIVER, JJ., concur.