[No. 4648–II.   Division Two.   December 1, 1981.]

ANNA MAXWELL, *Respondent*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant*.

*Kenneth O. Eikenberry, Attorney General,* and *Walter E. White, Assistant,* for appellant.

*Tom O'Neill* of *Evergreen Legal Services,* for respondent.

PEARSON, J.—The Washington State Department of Social and Health Services (DSHS) appeals a decision directing it to pay the plaintiff $298.83 in welfare benefits and awarding her attorney's fees. The issue before us is whether, in view of RCW 74.12.010,[1] this court has the authority to remedy a violation of plaintiff's constitutional

---

[1] RCW 74.12.010 limits Aid to Families with Dependent Children–Employable public assistance to any child in need who has been deprived of parental support by reason of the unemployment of a parent or stepparent *"to the extent that matching funds are available"*. (Italics ours.)

right to equal protection by ordering the State to pay welfare benefits even though the United States Department of Health and Human Services (DHHS) may not provide matching funds. We affirm.

On May 23, 1979, Anna Maxwell applied for Aid to Families with Dependent Children–Employable (AFDC–E) public assistance. The application of DSHS regulations in effect at that time, WAC 388–24–050(4) and WAC 388–24–070, –075, consistent with the requirements of 42 U.S.C. § 607 of the Social Security Act,[2] limited AFDC–E benefits to families of unemployed fathers only; families where only the mother was unemployed did not qualify. If Anna Maxwell had been a father, her family would have been eligible for AFDC–E benefits.

On May 29, 1979, the DSHS denied Maxwell's application solely on the basis of sex. She requested an administrative hearing under RCW 74.08.070. The hearing was held on July 31, 1979, resulting in a decision affirming the denial of AFDC–E benefits on September 20, 1979. The hearing examiner concluded that *Califano v. Westcott,* 443 U.S. 76, 61 L. Ed. 2d 382, 99 S. Ct. 2655 (1979), declaring 42 U.S.C. § 607 unconstitutional, was not retroactive, and that changes in the DSHS regulations that extended AFDC–E benefits to the family of an unemployed mother were prospective only from August 1, 1979.

The administrative decision was appealed to the Cowlitz County Superior Court pursuant to RCW 34.04.130 and RCW 74.08.080. The trial court reversed the administrative decision and directed the DSHS to pay benefits and attorney's fees to Maxwell.

Our first inquiry on appeal is whether the application of

---

[2]42 U.S.C. § 607 provides:

"The term 'dependent child' shall, notwithstanding section 606(a) of this title, include a needy child who meets the requirements of section 606(a)(2) of this title who has been deprived of parental support or care by reason of the unemployment . . . of *his father* . . ." (Italics ours.) Italicized language was amended effective October 1, 1981, to read: "the parent who is the principal earner". Pub. L. No. 97–35.

the aforementioned WAC regulations was unconstitutional on the date the DSHS rejected Maxwell's application. On June 25, 1979, the United States Supreme Court in *Califano v. Westcott*, 443 U.S. at 89, declared unconstitutional 42 U.S.C. § 607, the federal statute after which the State's action is patterned, because the gender–based classification was not substantially related to any important government interest. The DSHS contends that this case should not have retroactive effect so as to invalidate the State's action for applications such as plaintiff's that were made before June 25, 1979. We disagree that there is an issue of retroactive effect in this case and hold that on several grounds the State's discrimination against Maxwell was unconstitutional on the date plaintiff's application was denied.

■ First, the trial court was correct to apply *Califano* to the present case because *Califano* was decided when this case was on appeal. *See Lau v. Nelson*, 92 Wn.2d 823, 601 P.2d 527 (1979). There might be an issue of retroactivity if *Califano* had been decided after Maxwell had completed the appeal of her case, and if we were inclined to reach a result contrary to *Califano*. But since Maxwell's timely appeal was still pending, and since she sought a determination of the constitutional issue as of the date she was denied benefits, there is clearly no issue of retroactivity which might affect her remedy in this case.

■ Second, we have little doubt that the DSHS violated Maxwell's rights under article 1, section 12, and article 31, section 1, of our constitution, as well as under the United States Constitution, by denying her benefits on the basis of sex. Gender–based classifications are suspect under the state constitution and are subject to strict judicial scrutiny. *Darrin v. Gould*, 85 Wn.2d 859, 868, 540 P.2d 882 (1975). We note that if the United States Code section did not survive scrutiny under the more lenient federal standard for gender–based classifications, a fortiori the DSHS application of the regulations is unconstitutional under our constitution.

■ We next consider how to remedy the constitutional

violation. RCW 34.04.130(6)(a) gives this court authority to reverse an agency decision that prejudices substantial rights under the United States Constitution or the Washington Constitution. The constitutional defect in the regulation that we must remedy is that the regulation unconstitutionally denies welfare benefits to the families of unemployed mothers. To remedy the inequity caused by an unconstitutional gender–based classification, the court can either extend benefits under the statute to the excluded class or eliminate benefits as to the included class. *Simpson v. State,* 26 Wn. App. 687, 695, 615 P.2d 1297 (1980). In this case, our choice is whether to extend AFDC–E benefits to the families of unemployed mothers or to eliminate the benefits as to families of unemployed fathers.[3] To reach a decision on the appropriate remedy, we must first discuss an apparent conflict between two sections of RCW Title 74.

RCW 74.08.080 provides that assistance shall be paid from the date an application is denied to an applicant who successfully appeals the denial of welfare benefits. On the other hand, RCW 74.12.010 gives the DSHS secretary discretion to provide that AFDC–E benefits will be available to the extent federal matching funds are available. In its interpretation of these two sections, DSHS contends that even though a welfare applicant may be deprived of benefits by operation of a regulation that draws an unconstitutional classification, the State has no obligation to pay benefits if the federal government does not provide matching funds.[4] We disagree.

When we must resolve a conflict between two statutes, our aim must be to effectuate legislative intent, and we can only ascertain legislative intent by looking to the statutory context as a whole. *Hartman v. State Game Comm'n,* 85 Wn.2d 176, 179, 532 P.2d 614 (1975); *State v.*

---

[3]This second choice may be moot if the benefits are not presently available to anyone, as the State contended at oral argument.

[4]We are informed that a federal class action seeking withheld AFDC–E benefits is pending in United States District Court.

*Munson,* 23 Wn. App. 522, 526, 597 P.2d 440 (1979). Accordingly, RCW 74.12.010 cannot be read in a vacuum. It must be read in context with other sections dealing with public assistance and appeals from the denial of welfare benefits.

■ RCW 74.08.025(1) provides that public assistance *shall* be awarded to *any* applicant in need. RCW 34.04-.130(6)(a) gives the court authority to reverse a decision that prejudices substantial constitutional rights. RCW 74.08.080 states that welfare assistance *shall* be paid from the date an application is denied to an applicant who successfully appeals the denial of benefits. These sections indicate an intent by the legislature that public assistance should be made available to the needy and that where it is wrongfully withheld, public assistance should be awarded from the date the application was denied. We conclude also that since RCW 74.08.080 mandates that assistance "shall" be paid, in the event of a successful appeal such provision should be given preference over RCW 74.12.010 where an unconstitutional discrimination has occurred.

RCW 74.98.030, the severability clause for title 74, supports our conclusion that the legislature intended the AFDC–E program to operate constitutionally by extending benefits to the excluded class, rather than eliminating the program altogether. Moreover, we recognize that as a practical matter we would be affording the plaintiff no remedy for the unconstitutional discrimination she and her family suffered if we eliminated the AFDC–E program as to the families of unemployed fathers.

Finally, we note that the United States Supreme Court in *Wengler v. Druggists Mut. Ins. Co.,* 446 U.S. 142, 64 L. Ed. 2d 107, 100 S. Ct. 1540 (1980), has sanctioned the remedy of extending benefits under a state statute to the class excluded by an unconstitutional classification. In *Wengler,* a Missouri statute granted death benefits to a widow without proof of dependence on her husband, but denied death benefits to a widower unless he could prove dependence on his wife or mental or physical incapacity. The court stated

at pages 152–53:

Thus we conclude that the Supreme Court of Missouri erred in upholding the constitutional validity of § 287.240. We are left with the question whether the defect should be cured by extending the presumption of dependence to widowers or by eliminating it for widows. *Because state legislation is at issue, and because a remedial outcome consonant with the state legislature's overall purpose is preferable, we believe that state judges are better positioned to choose an appropriate method of remedying the constitutional violation.*

(Italics ours.) For a prior application of this remedy, *see Simpson v. State, supra.*

We conclude that the result most consonant with the legislature's purpose in participating in the AFDC–E program is to extend the benefits to the plaintiff. Accordingly, we order the State to pay $298.83 to Anna Maxwell, and we allow her $1,000 for attorney's fees, pursuant to RCW 74.08.080.

REED, C.J., and PETRIE, J., concur.